

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, 7th floor*  973-645-2700
*Newark, New Jersey 07102*

November 23, 2021

<u>Via ECF and Email</u>
The Honorable Anne E. Thompson
Senior United States District Judge
Clarkson S. Fisher Federal
Building and Courthouse
402 E. State Street
Trenton, NJ 08608

    Re: *Unites States v. Yitzchok "Barry" Kurtzer and Robin Kurtzer*,
       Crim. No. 21-579 (AET)

Dear Judge Thompson:

  Facing an 11-count indictment alleging that they accepted bribes and kickbacks to collect genetic test swabs from their patients, regardless of medical necessity, and then steered those tests to laboratories who profited by submitting false bills to Medicare, defendants Yitzchok "Barry" Kurtzer and Robin Kurtzer seek this Court's permission to resume billing Medicare. The Honorable Leda Dunn Wettre, U.S. Magistrate Judge, denied their motion on three separate occasions—in July 2020 (at Barry Kurtzer's initial appearance), in September 2020 (after he filed his first motion to bill Medicare), and in October 2021 (after he filed yet another motion to bill Medicare). The Kurtzers now seek a fourth bite at the apple, and this Court should deny their application for the same reasons that Judge Wettre did. Specifically, the bail condition must be maintained in order to protect the public from further fraud by the defendants by precluding them from directly billing Medicare—the taxpayer-funded victim of their charged crimes.

## I.   Procedural History

### A.   The Charges

Barry Kurtzer, a primary care physician with offices in and around Scranton, Pennsylvania (the "Kurtzer Offices"), along with his wife Robin Kurtzer, who worked periodically in the Kurtzer Offices, were each charged by criminal complaint on July 8, 2020 for conspiring from in or about October 2018 to in or about June 2020 to solicit and receive illegal remunerations contrary to the federal Anti-Kickback Statute, in violation of 18 U.S.C. § 371. The complaint detailed numerous recorded conversations in which Barry Kurtzer and Robin Kurtzer—in their own words—accepted monthly cash kickbacks and bribes in exchange for collecting DNA samples from elderly Medicare patients and sending them for genetic tests to clinical laboratories in New Jersey and Pennsylvania. The cash kickbacks ranged up to $5,000, and the Kurtzers were recorded typically accepting the cash inside the Kurtzer Offices, behind locked doors. At one point, Robin Kurtzer complained that they were not getting paid enough and renegotiated a higher kickback and bribery fee.

Barry Kurtzer's pattern of ordering these expensive genetic tests was predicated on fraud, detached from his patients' medical needs. When the Kurtzers did not receive their kickback and bribe payments, the volume of genetic tests that Barry Kurtzer generated dipped. But, that volume again increased when the kickback and bribe payments resumed. And, Barry Kurtzer agreed to switch from ordering PGx to CGx tests for his Medicare patients simply because CGx reimbursed at a higher rate. There was no medical basis for that decision: PGx was used to identify how patients' genes affected their response to certain drugs, and CGx was a cancer screening test. Indeed, even during the height of the COVID-19 pandemic, the Kurtzers continued to solicit bribes and kickbacks in return for continuing to engage in this fraud.

On July 26, 2021, a federal grand jury returned an 11-count indictment against Barry Kurtzer and Robin Kurtzer that expanded upon the complaint and charged, among other things, the following:

- Barry Kurtzer submitted a Medicare Enrollment Application in which he certified that he would "abide by all Medicare laws, regulations, and program instructions;" that "he would not knowingly present or cause to be presented false or fraudulent claims;" and that "payment of claims was conditioned upon the underlying claims complying with the federal Anti-Kickback Statute." (Indictment Count 1 ¶ 1(r))

- Barry Kurtzer and Robin Kurtzer subsequently agreed to "receive kickbacks and bribes of approximately $2,000 per month" in exchange for steering genetic test swabs for Medicare patients to Laboratory-1. (*Id.* ¶ 4(b))

- In order to get a patient to agree to be swabbed for a genetic test, Barry Kurtzer falsely told the patient, "We have to do these swabs on you. Medicare is going after us. It's a new thing." (*Id.* ¶ 4(g))

- Barry Kurtzer and Robin Kurtzer also solicited and received bribes and kickbacks for other laboratory tests, including allergy tests, that Barry Kurtzer and his staff steered to a specific laboratory. (*Id.* ¶ 4(i))

- Barry Kurtzer continued to received bribes and kickbacks after the onset of the COVID-19 pandemic, choosing to receive them by a money transfer app rather than in person. (*Id.* ¶ 4(p))

- Medicare was billed over $1,000,000 for genetic tests steered by Barry Kurtzer and Robin Kurtzer to specific laboratories. (*Id.* ¶ 4(s))

- Barry Kurtzer caused his staff to "flag new Medicare patients to be swabbed for genetic tests, regardless of whether the testing was medically necessary." (*Id.* Count 11 ¶ 4(d))

The Indictment further alleges that Barry Kurtzer and Robin Kurtzer enlisted medical employees in the scheme to help collect the DNA swabs in exchange for receiving kickbacks and bribes. Two of those employees, Amber Harris and Shanelyn Kennedy, have both pled guilty for their respective roles in the conspiracy. *See United States v. Harris*, 20-cr-741 (AET); *United States v. Kennedy*, 20-cr-914 (AET). At their respective plea hearings before this Court, Harris and Kennedy each admitted that unless patients actively requested their genetic test results, Barry Kurtzer never received or sought out a patient's results from those tests.[1] Harris and Kennedy further admitted to Robin Kurtzer's participation in the kickback and bribery scheme. In short, and in addition to other evidence, Harris and Kennedy confirmed Barry Kurtzer's long running fraud of ordering genetic tests in exchange for kickbacks and bribes that he

---

[1] The Government will order and provide a transcript of Harris's and Kennedy's respective plea hearings upon the Court's request.

and Robin Kurtzer solicited and received, without regard for his patients' medical needs.

### B. Judge Wettre's Denial of Barry Kurtzer's First Motion to Modify the Billing Condition

On July 9, 2020, at Barry Kurtzer's initial appearance and over his objection, Judge Wettre imposed certain release conditions, including a condition that "prohibited [him] from submitting, or causing to be submitted, any claims to Medicare or other federal health care programs." Dkt. #9 at 2 (the "Billing Condition"). On July 14, 2020, the Honorable James B. Clark, III, U.S. Magistrate Judge, imposed the same condition on Robin Kurtzer during her initial appearance. Ex. 1 (Order Setting Conditions of Release). Dkt. # 28 at 2.

Subsequently, by letter dated September 4, 2020, the Centers for Medicare and Medicaid Services ("CMS")[2] notified Barry Kurtzer that it was suspending his Medicare reimbursement payments "based on credible allegations of fraud, and that the suspension "may last until resolution of the [government's] investigation[.]" Def. Br. Fleming Aff. Ex. B. at 2. Barry Kurtzer petitioned CMS to remove that suspension. Dkt #34 at 2.

While that petition was pending, Barry Kurtzer filed a bail motion with Judge Wettre (the "First Motion") to remove the Billing Condition, claiming that it severely impacted his finances and imposed hardships on his patients. Dkt. #34 at 1, 3-4. He also stated his willingness to have an independent billing service handle the Kurtzers Offices' Medicare billing going forward. *Id.* at 2. On September 30, 2020, after a lengthy hearing on that motion, Judge Wettre denied Barry Kurtzer's request. *See* Agarwal Aff. Ex. 1 (Sept. 30, 2020 Hearing Trans. ("HT")) at 31-34. The Court rejected Barry Kurtzer's argument that the Billing Condition "is unduly restrictive," noting that it "did not prevent him from working as a doctor altogether," and that he could continue treating the roughly 40% of his patients not on Medicare. *Id.* at 31, 33. Thus, the Court maintained the Billing Condition, finding that Barry Kurtzer's "danger to the community is posed by his alleged misuse of the Medicare system[.]" *Id.* at 32-33.

---

[2] CMS is a federal agency within the U.S. Department of Health and Human Services (HHS) that, among other things, administers the Medicare program and works in partnership with state governments to administer Medicaid.

Subsequently, in November and December 2020, CMS denied Barry Kurtzer's appeal of its decision to suspend him and the Kurtzer Offices from participating in the Medicare program. Agarwal Aff. Ex. 2 (Nov. 18, 2020 CMS Response to Suspension Rebuttal); Agarwal Aff. Ex. 3 (Dec. 15, 2020 CMS Response to Suspension Rebuttal).

### C. Judge Wettre's Denial of Barry Kurtzer's Second Motion to Modify the Billing Condition

On May 25, 2021, and June 30, 2021, Barry Kurtzer, this time joined by Robin Kurtzer, again moved to modify the Billing Condition. Dkt # 47, 54. Despite knowing that he could not bill or collect money from Medicare patients—because of the Billing Condition and the CMS-imposed Medicare suspension—Barry Kurtzer claimed that he had incurred debt by continuing to see Medicare patients without an opportunity for reimbursement. Dkt # 47 at 3-4. Barry Kurtzer also again offered to enlist a third-party billing company to oversee the Kurtzer Offices' billing. *Id.* at 7. By this point, CMS already had considered and rejected Barry Kurtzer's offer "to engage an independent billing service to do its actual billing, including Medicare submissions, and to establish a pre-billing, peer-reviewed screening program to assuage any concerns." Agarwal Aff. Ex. 3 at 4. CMS concluded that "[r]egardless of any purported steps [Barry Kurtzer's office] is prepared to take, the concerns still remain. The suspension will remain in effect as long as the investigation into this matter continues." *Id.*

In opposition to this second motion to modify the Billing Condition (the "Second Motion"), the Government argued that Barry Kurtzer's motion was effectively a motion to reconsider Judge Wettre's earlier September 2020 ruling. Dkt. # 51 at 8. Further, the Government argued that Barry Kurtzer had not offered any new facts or law to warrant reconsideration (e.g., intervening change in law, new evidence, or manifest injustice). *Id.* And, the Government noted that Barry Kurtzer's decision to treat Medicare patients, and accrue Medicare bills, knowing all the while that he could not actually bill Medicare, should not inure to his benefit, much less result in any revision to his release conditions.

The Government also cross-moved to preclude Barry Kurtzer from practicing medicine, arguing that Barry Kurtzer, as a referring doctor, had, in fact, caused over $2 million in indirect Medicare billings in violation of the Billing Condition. *Id.* at 5.

On August 9, 2021, at an initial hearing on the Second Motion and after the Kurtzers were indicted, Dkt # 57, Judge Wettre asked the parties to meet and confer

regarding defendants' proposal to enlist a third-party billing company. Judge Wettre also advised the Government that she was not inclined to grant its cross-application to preclude Barry Kurtzer from practicing medicine. And, finally, Judge Wettre noted that the indirect billing provision may have been unclear, that Barry Kurtzer may have unintentionally violated it, and that the parties should work to clarify it.

Pursuant to the Court's directive, the Government met and conferred with defense counsel in good faith in an effort to reach common ground. The Government spoke to representatives from the independent consulting companies that the defendants had proposed hiring to peer review the billing and office management of Barry Kurtzer's medical practice. Those interviews confirmed that the consultants would not monitor patient-physician interactions or the interactions between Barry Kurtzer and Robin Kurtzer, on the one hand, and sales representatives, on the other hand, who may offer or pay kickbacks. As discussed below, it is those interactions, between patients, sales representatives, and Barry and Robin Kurtzer, that form the basis for the Indictment. Barry Kurtzer used those interactions to cause false submissions to Medicare, to order unnecessary genetic tests, and to accept bribes and kickbacks. The Indictment gives specific recorded examples of Barry Kurtzer engaging in this corrupt behavior. Accordingly, the Government argued that defendants' proposed amendment to the Billing Condition, which was (and continues to be) premised on the use of outside consultants, provided insufficient protection against Barry Kurtzer committing fraud and/or accepting kickbacks.

Additionally, the Government—heeding Judge Wettre's guidance—proposed a compromise to defense counsel to clarify the Billing Condition. That compromise modified the Billing Condition to add the following language (additions to the original Billing Condition are in bold).

> The defendants are prohibited from submitting, or causing to be submitted, any claims to Medicare or other federal health care programs. **In circumstances where Barry Kurtzer is listed as the referring physician for services rendered outside of his medical practice, the defendants will not be in violation of this provision so long as the defendants have no role in recommending where or from whom such referral services are rendered.**

In further effort to reach an agreement, the Government also proposed the following compromise, which the defendants rejected:

     a. Barry Kurtzer could hire a salaried primary care provider whose credentials would be provided to the Government and the Court;

     b. This salaried provider would have to agree and certify that Barry Kurtzer would not participate in any way in the treatment of any patients' insured by Medicare or other federal payors; and

     c. Barry Kurtzer would agree to use an independent billing company to process the billing and do peer review for this salaried primary care provider.

This condition would eliminate the patient-physician interactions that form the basis for the Indictment, and it would minimize the interactions between Barry Kurtzer and sales representatives. It would further allow for Barry Kurtzer's practice to continue treating his patient population.

     On October 15, 2021, Judge Wettre held a final hearing with respect to defendants' Second Motion. Judge Wettre found that defendants' application did not satisfy the standard for a "motion to reconsider." Accordingly, Judge Wettre again denied defendants' motion to modify the Billing Condition. Judge Wettre also adopted the Government's proposal to clarify the Billing Condition (by adding the bolded language above).

     On October 28, 2021, the Government agreed to a stay of the modified Billing Condition pending defendants' appeal of Judge Wettre's decision to this Court. Dkt # 72.

## II. STANDARD OF REVIEW

A district court reviews a magistrate judge's bail decision *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985).

## III. ARGUMENT

Pre-trial release and detention are governed by the Bail Reform Act of 1984. 18 U.S.C. §§ 3141-56. A person charged with an offense may be released pending trial subject to, among other conditions, the "least restrictive further condition, or combination of conditions" that a judicial officer determines "will reasonably assure . . . the safety of any other person and the community." 18 U.S.C § 3142(c)(1)(B). Among the combination of conditions that may be imposed are the conditions that the person "avoid all contact with an alleged victim of the crime" and "satisfy any other condition that is reasonably necessary to assure . . . the safety of any other person and the community." 18 U.S.C. §§ 3142(c)(1)(B)(v) and (xiv). Section 3142(g) provides several factors that this Court must consider in making that determination, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," and "the history and characteristics" of the defendant.

Congress has long recognized that fraudulent health care practices pose an economic danger to the Medicare program and the community at large:

> In whatever form it is found, . . . fraud in these health care financing programs adversely affects all Americans. It cheats taxpayers who must ultimately bear the financial burden of misuse of funds in any government-sponsored program. It diverts from those most in need, the nation's elderly and poor, scarce program dollars that were intended to provide vitally needed quality health services.

H.R. 95-393, pt. II, at 44 (1977); H.R. Rep. 104-747 (1996) ("Everyone pays the price for health care fraud: beneficiaries of Government health care insurance such as Medicare and Medicaid pay more for medical services and equipment; consumers of private health insurance pay higher premiums; and taxpayers pay more to cover health care expenditures.").

According to the legislative history of the Bail Reform Act, "the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." S. Rep. No. 98-225, at 12 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3195. Courts have consistently held

that "safety" encompasses economic harms, alongside physical ones. *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "safety" for purposes of the Bail Reform Act contemplates criminal activity beyond violence). "When assessing danger to the community [under the BRA], 'danger may, at least in some cases, encompass pecuniary or economic harm.'" *United States v. Giampa*, 904 F. Supp. 235, 358 (D.N.J. 1995) (quoting *United States v. R.G. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992)); see also *United States v. Madoff*, 586 F. Supp. 2d 240, 253 (S.D.N.Y. 2009) ("The Court recognizes, therefore, that there is jurisprudence to support the consideration of economic harm [under the BRA] in the context of detention to protect the safety of the community."); *United States v. DiSano*, No. 18-CR-337-3 (WFK), 2018 WL 11191538, at *2 (E.D.N.Y. Dec. 14, 2018) ("Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community.").

As set forth below, this Court should reject defendants' attempts to remove the Billing Condition (and its modification) because it is a standard condition called for by the factors set forth in the Bail Reform Act and is warranted to protect the Medicare program from the defendants.

### A. The Billing Condition Is Standard and Logical

As an initial matter, the Billing Condition is a standard condition frequently imposed in this District on defendants charged with health care fraud. *See, e.g.*, *United States v. Ellis, et al.*, 19-cr-693, Dkt. #15, 44, 48, 54 (D.N.J. 2019) (BRM) (in genetic testing fraud case, precluding health care professionals "from submitting, or causing to be submitted, claims to Medicare or other health care program"); *United States v. Chu*, 19-cr-678, Dkt. # 5 (D.N.J. 2019) (WJM) (in case involving allergy testing fraud and blood testing fraud, Court imposed a pretrial release condition stating that defendant "shall not bill or cause to be billed Medicare, Medicaid, or any federal healthcare program"); *United States v. Decorso*, 19-cr-249, Dkt. # 8 (D.N.J. 2019) (PGS) (in durable medical equipment fraud case, Court ordered defendant to "refrain from filing any claims, directly or indirectly, to Medicaid or Medicare or any Federal Health Care program").

The condition also has been regularly imposed in other districts around the country. *See, e.g.*, *United States v. Muhammad Aamir, et al.*, 13-cr-20039, Dkt. #13 (E.D. Mich. 2013) (ordering defendant's release subject to condition that he not bill or cause to be billed Medicare, Medicaid, or any other federal program); *United States v. Sonjai Poonpanij, et al.*, 12-cr-20603, Dkt. # 9 (E.D. Mich. 2012) (same); *United States v. Rashid*, 2017 WL 3334035, at * 5-6 (E.D.Mich. Aug. 4, 2017 (in Medicare fraud cases,

- 9 -

granting defendant's appeal to be released on bail but imposing condition that defendant not "directly or indirectly bill Medicaid or Medicare"); United *States v. Chen*, 21-cr-494, Dkt. # 8 (EDNY) (RJD) (in a health care fraud case, defendant ordered to "not submit claims to Medicare or Medicaid (excluding treatment/items/services for herself or depends"); *United States v. Khaim*, 20-cr-580, Dkt. #9 (EDNY) (AMD) (in a healthcare fraud case, defendant ordered to "not submit, directly or indirectly, claims to Medicare or Medicaid").

This condition also is not just limited to health care fraud. As this Court is aware, courts routinely impose conditions precluding defendants from associating with, billing, or interacting with victims of their alleged crimes in non-health care matters. *See, e.g., United States v.* Adolphe, 21-mj-1205, Dkt. # 45 (EDNY) (KAM) (precluding defendant from submitting claims to the New York Early Intervention Program); *United States v. May*, 568 F.3d 597, 608 (6th Cir. 2009) (upholding condition of supervised release that defendant who had embezzled money meant for payroll taxes has "no association with the Financial Services Industry, in any capacity whatsoever, except as a consumer").

Barry Kurtzer and Robin Kurtzer have been indicted for accepting bribes and kickbacks to collect genetic test swabs from Barry Kurtzer's patients, regardless of medical necessity, and with subsequently causing Medicare to be fraudulently billed for the corresponding genetic tests. These allegations—bribery, kickbacks, and fraud, at the expense of, among other victims, the Medicare program—fall within the heartland of cases that have routinely precluded defendants like the Kurtzers from submitting claims to the very entities they are accused of defrauding.

### B.  The Factors Set Forth in the Bail Reform Act Justify the Billing Condition

The factors set forth in the Bail Reform Act support imposition of the Billing Condition.

#### 1.  Nature and Circumstances of the Offense

As set forth above, Barry Kurtzer and Robin Kurtzer have been charged by indictment with significant health care crimes. Barry Kurtzer submitted a Medicare Enrollment Application in which he certified his understanding that the payment of claims was conditioned upon the claims complying with the Anti-Kickback Statute. He also certified that he would comply with Medicare laws and regulations and that he would not knowingly present or cause to be presented false or fraudulent claims. He

then accepted bribes and caused the submission of false and fraudulent claims to Medicare. This factor weighs strongly in favor of imposing the Billing Condition to prevent Barry Kurtzer from further defrauding Medicare, a victim of his alleged offenses.

### 2. The Weight of the Evidence

The evidence in this case, much of which has been produced to defendants, consists of videotaped recordings of Barry and Robin Kurtzer actively committing the crimes with which they are charged. The recordings show Barry and Robin Kurtzer, on multiple occasions, soliciting and accepting wads of cash bribes and kickbacks inside Barry Kurtzer's offices as part of their scheme. Those recordings, coupled with witness testimony and medical records, paint a compelling picture of a doctor driven by greed and ambivalent to his patients' needs.

At the hearing on Barry Kurtzer's First Motion to remove the Billing Condition, Judge Wettre held that the "weight of the evidence appears to be strong." Agarwal Aff. Ex. 2 at 32. Indeed, Judge Wettre noted that the Complaint cited numerous recorded conversations in detail between Barry Kurtzer and another individual to arrange kickbacks. *Id.*

Defendants' arguments to the contrary fall flat. First, they argue that the weight of the evidence is not strong because they have been in full compliance of their pretrial conditions of release for 15 months. Def. Br. 12. But as discussed above (and detailed in the Government's response to the Second Motion, *see* Dkt. #51 at 5), the Government argued to Judge Wettre that Barry Kurtzer repeatedly violated the Billing Condition by indirectly causing Medicare to be billed by other service providers.[3] And, during the first bail hearing, Judge Wettre had to chastise Barry Kurtzer on two fronts: first, for failing to inform his Pre-Trial Officer that he had changed his primary residence, *see* Agarwal Aff. Ex. 1 at 16-18; and second, for disrespecting the Court by "shaking his head" while Judge Wettre spoke, *id.* at 31-32. In short, Barry Kurtzer's conduct while on pretrial release has not been pristine.

---

[3] Oddly, defendants make multiple references to the Government's statement at their arraignment that they were in compliance with their bail conditions. At that time, as the Government noted, the parties were engaged in briefing the dispute over bail conditions to Judge Wettre. The Government cross-moved, in that dispute, to preclude Barry Kurtzer from practicing medicine because there had been a number of indirect billings to Medicare. Certainly, the Government did not intend to suggest at arraignment that it had withdrawn its cross-motion before Judge Wettre. Rather, the Government simply meant to apprise the Court of the pending dispute before Judge Wettre (which it did) and to advise the Court that it was not, at that time, seeking any change in bail conditions, from this Court.

In any event, compliance with bail conditions is just that, compliance, which is to be expected of a closely monitored defendant facing multiple criminal charges. By analogy—and to highlight the folly of this argument—a defendant precluded from possessing a gun as a bail condition should not be permitted to reposes a gun after 15 months of compliance with that condition. And certainly the Government's evidence does not dissipate every month the defendants comply with their release conditions. Put simply, that defendants have abided by the condition that they not bill Medicare does not mean that they now should be allowed to bill Medicare.

Next, the defendants argue that they are presumed innocent. Def. Br. 12 n. 5. Of course they are. But that principle is not the relevant inquiry under the Bail Reform Act. Nor is it probative of the overwhelming strength of the Government's evidence.

Finally, the defendants somewhat vague request to advise the Court *ex parte* about their defenses to the Government's case is preposterous. If they believe there are defenses relevant to their bail motion they must put them on the record to the Court and the Government, so that the Government can respond. Any attempt to launch a shadow defense to the Court behind closed doors should be rejected now, as it would be at trial.

Accordingly, given the mountain of evidence in this case, this factor weighs strongly in favor of imposing the Billing Condition.

### 3. History and Characteristics of the Defendants

This factor also favors imposition of the Billing Condition.

Any claims that Barry Kurtzer is a "dedicated," generous, and responsible doctor (Def. Br. 12), are undercut by the allegations in the Indictment. Without regard for their health and well being, Barry Kurtzer is alleged to have lied to the patients he was treating for his own personal profit. And far from a singular occurrence, his criminal scheme lasted over a year and continued into the first wave of the COVID-19 pandemic. Accordingly, although his patients may have believed him to be an "old fashioned country doctor," *see id.*, the allegations in the Indictment show him to have been a doctor who used patients for his own illicit financial gain. He should not be lauded for engendering his patients' trust while committing fraud and collecting bribes at their expense.

Defendants also argue that they are devout and active members of the Jewish community and are devoted parents to their nine children, none of which the Government disputes at this time. The Billing Condition, however, does not inhibit the practice of their faith or how they care for their children. Rather, the Billing Condition is narrowly tailored to address a very specific concern—submitting or causing to be submitted false and fraudulent bills to Medicare—which lies at the heart of the charged criminal conduct and Barry Kurtzer's relevant history and characteristics.

        4.     <u>The Nature and Seriousness of the Danger to the Community</u>

According to the Indictment, defendants caused over $1,000,000 to be billed to Medicare in genetic testing claims. And, to carry out the scheme, Barry Kurtzer lied to the very patients he served. His patients thus remain at risk of undergoing medically unnecessary testing, and Medicare remains at risk of reimbursing for medically unnecessary services. The Billing Condition protects Medicare. And, by removing the profit motive from his interactions with patients, it also helps to protect Barry Kurtzer's patients.

    **C.    Defendants' Remaining Arguments Are Unpersuasive**

Defendants' arguments in favor of removing the Billing Condition are not persuasive. They did not sway Judge Wettre and, respectfully, they should not sway this Court.

First, defendants claim that the existing condition of release that requires a defendant not to commit any crimes is a sufficient safeguard. Def. Br. 2. It is not. If that were true, there rarely would be any need (at least for non-recidivist defendants) to protect victims from future harm by imposing narrowly tailored bail conditions. Moreover, defendants knew that it was illegal to accept bribes and kickbacks; that it was illegal to submit or cause to be submitted false and fraudulent Medicare claims; and that it was illegal to induce their patients to be swabbed for genetic testing regardless of whether the testing was medically necessary. Indeed, Barry Kurtzer attested that he would not do those things when he applied to bill Medicare. Yet, according to the allegations in the Indictment, that knowledge did nothing to stop them from engaging in brazen health care crimes.

Next, defendants assert that any concerns over fraudulent billing have been addressed by their proposal to add a third-party management company and a third-party billing company to take over the management and billing responsibilities at

Barry Kurtzer's practice. Defendants' proposal does little, if anything, to mitigate the justifiable concerns of fraud. *United States v. Mok*, No. 20-MJ-30163, 2020 WL 2528671 (E.D. Mich. May 18, 2020) (denying defendant's proposal to bill Medicare subject to third-party review of any claims submitted to Medicare). As the Government argued to Judge Wettre, those third parties cannot (and will not) monitor patient-physician interactions or the interactions between Barry Kurtzer and Robin Kurtzer, on the one hand, and sales representatives, on the other, who may offer or pay kickbacks. It is those interactions, between patients, sales representatives, and Barry and Robin Kurtzer that form the basis for the Indictment in this matter. Barry Kurtzer used those interactions to defraud Medicare, to order unnecessary genetic tests, and to accept bribes and kickbacks, and the Indictment gives specific recorded examples of Barry Kurtzer engaging in this corrupt behavior. Accordingly, defendants' proposed amendment to the bail condition, which is premised on the use of outside consultants, provides insufficient protection against Barry Kurtzer committing fraud and/or accepting kickbacks.[4]

The Billing Condition remains necessary to protect the public and the integrity of Medicare and other similar programs. The Court should reject defendants' fourth attempt to lift it.

### D. Judge Wettre's Modification of the Billing Condition Is Proper and Should Not be Disturbed

Judge Wettre's modification of the original Billing Condition, setting forth the circumstances under which Barry Kurtzer can provide referrals without running afoul of his conditions of release, provides clarity to Barry and Robin Kurtzer. This Court should affirm it.

In response to Barry Kurtzer's second motion to remove the Billing Condition, the Government argued to Judge Wettre, as discussed above, that, in fact, Barry Kurtzer had caused over $2,000,000 in indirect Medicare billings due to his referrals to other health care providers. Those billings would have constituted a violation of the Billing Condition and went to the heart of the charges in this case: Barry Kurtzer, after all, is alleged to have fraudulently referred patients to lab tests, regardless of

---

[4] Additionally, CMS already considered and rejected Barry Kurtzer's offer "to engage an independent billing service to do its actual billing, including Medicare submissions, and to establish a pre-billing, peer-reviewed screening program to assuage any concerns." Ex. __ at 4. CMS concluded that "[r]egardless of any purported steps [Barry Kurtzer's office] is prepared to take, the concerns still remain. The suspension will remain in effect as long as the investigation into this matter continues." *Id.*

medical necessity. Suggesting, however, that the original "indirect" billing provision of the Billing Condition may have been unclear, Judge Wettre asked the parties to meet and confer on a provision to clarify it.

The modified Billing Condition allows Barry Kurtzer to refer Medicare patients for other services. But it strikes the proper balance of allowing Barry Kurtzer to ensure his patients receive medical treatment, while protecting the public, and Medicare, from Barry Kurtzer steering patients for certain services based on the types of corrupt and fraudulent relationships alleged in the Indictment.

Defendants argue that the modified billing condition deprives them of due process. Def. Br. 16. It does not. As an initial matter, the Court is not taking or suspending Barry Kurtzer's medical license, so the concerns about due process are misplaced. Moreover, procedural due process requires notice and an opportunity to be heard—defendants have been provided with an abundance of both of these procedural protections. *See United States v. Salerno*, 481 U.S. 739, 752 (1987) (upholding pretrial detention under Bail Reform Act against due process challenge).

Defendants also argue that the modified billing condition puts them in violation of Pennsylvania law or in violation of a doctor's standard of care. It does not. Doctors charged with health care fraud have routinely been prevented from directly or indirectly billing Medicare. This common-sense and narrowly-tailored condition has not, and does not, pit the indicted doctor against his ethical or regulatory obligations. If Barry Kurtzer's was concerned about his patients and not profiting from Medicare, he could simply advise them of the modified Billing Condition and of the limits it puts on his ability to refer patients and to bill Medicare. By contrast, his repeated attempts to lift this condition highlights that, once again, his concerns are exclusively financial.

Frankly, throughout his briefing—to Judge Wettre and now to this Court—Barry Kurtzer has continually suggested that he is a victim. He has painted a picture of woe, of a doctor who cannot treat his patients, or bill Medicare, or make proper referrals, all because of unduly restrictive conditions of release. He has suggested that the Court ought simply to trust him, and that it should remove all restrictions on his ability to bill Medicare and practice medicine, because he can be trusted not to commit another crime. That is not the law. It is not what the Bail Reform Act requires. And, for good reason, it was rejected time and time again by Judge Wettre (and the other courts that have imposed this same condition). Barry Kurtzer seems unwilling or unable to simply advise his patients of the Billing Condition; to simply tell them what he can and cannot do under his conditions of release. That act—

communicating honestly with his patients—would allow him both to abide by the conditions of release and his ethical obligations as a physician.

## Conclusion

Barry Kurtzer and Robin Kurtzer should each continue to be prohibited from submitting, or causing to be submitted, any claims to Medicare and any other government health care program while on pretrial release. This condition, which is unremarkable in cases in which a health care practitioner has defrauded a federal health care program, is appropriate here to protect the public from the Kurtzers. Accordingly, the Government respectfully requests that the Court deny the defendants' Motion to modify their bail conditions. The Government additionally asks the Court to uphold the modified Billing Condition imposed by Judge Wettre.

Respectfully submitted,

RACHAEL A. HONIG
Acting United States Attorney

By: Rahul Agarwal
    Joshua L. Haber
    Ryan L. O'Neill
Assistant U.S. Attorneys

Cc:   Harold Ruvolt, Esq.
      Cathy Fleming, Esq.
      Marc Agnifilo, Esq.
      Jacob Kaplan, Esq.
      Counsel for the defendants

      Christopher Ziegert
      U.S. Pretrial Services